IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

ALAN W. SEASTROM,

              Plaintiff,

vs.                                    Case No. 11-4125-SAC

MICHAEL J. ASTRUE,
Commissioner of
Social Security,

              Defendant.

MEMORANDUM AND ORDER

This is an action reviewing the final decision of the Commissioner of Social Security denying the plaintiff disability insurance benefits and supplemental security income payments. The matter has been fully briefed by the parties.

**I.  General legal standards**

The court's standard of review is set forth in 42 U.S.C. § 405(g), which provides that "the findings of the Commissioner as to any fact, if supported by substantial evidence, shall be conclusive." The court should review the Commissioner's decision to determine only whether the decision was supported by substantial evidence and whether the Commissioner applied the correct legal standards. Glenn v. Shalala, 21 F.3d 983, 984 (10th Cir. 1994). Substantial evidence requires more than a scintilla, but less than a preponderance, and is satisfied by

1

such evidence that a reasonable mind might accept to support the conclusion.  The determination of whether substantial evidence supports the Commissioner's decision is not simply a quantitative exercise, for evidence is not substantial if it is overwhelmed by other evidence or if it really constitutes mere conclusion.  Ray v. Bowen, 865 F.2d 222, 224 (10th Cir. 1989). Although the court is not to reweigh the evidence, the findings of the Commissioner will not be mechanically accepted.  Nor will the findings be affirmed by isolating facts and labeling them substantial evidence, as the court must scrutinize the entire record in determining whether the Commissioner's conclusions are rational.  Graham v. Sullivan, 794 F. Supp. 1045, 1047 (D. Kan. 1992).  The court should examine the record as a whole, including whatever in the record fairly detracts from the weight of the Commissioner's decision and, on that basis, determine if the substantiality of the evidence test has been met.  Glenn, 21 F.3d at 984.

　　　The Social Security Act provides that an individual shall be determined to be under a disability only if the claimant can establish that they have a physical or mental impairment expected to result in death or last for a continuous period of twelve months which prevents the claimant from engaging in substantial gainful activity (SGA).  The claimant's physical or mental impairment or impairments must be of such severity that

they are not only unable to perform their previous work but cannot, considering their age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy.  42 U.S.C. § 423(d).

The Commissioner has established a five-step sequential evaluation process to determine disability.  If at any step a finding of disability or non-disability can be made, the Commissioner will not review the claim further.  At step one, the agency will find non-disability unless the claimant can show that he or she is not working at a "substantial gainful activity."  At step two, the agency will find non-disability unless the claimant shows that he or she has a "severe impairment," which is defined as any "impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities."  At step three, the agency determines whether the impairment which enabled the claimant to survive step two is on the list of impairments presumed severe enough to render one disabled.  If the claimant's impairment does not meet or equal a listed impairment, the inquiry proceeds to step four, at which the agency assesses whether the claimant can do his or her previous work; unless the claimant shows that he or she cannot perform their previous work, they are determined not to be disabled.  If the claimant survives step four, the fifth and final step

requires the agency to consider vocational factors (the claimant's age, education, and past work experience) and to determine whether the claimant is capable of performing other jobs existing in significant numbers in the national economy. Barnhart v. Thomas, 124 S. Ct. 376, 379-380 (2003).

The claimant bears the burden of proof through step four of the analysis. Nielson v. Sullivan, 992 F.2d 1118, 1120 (10th Cir. 1993). At step five, the burden shifts to the Commissioner to show that the claimant can perform other work that exists in the national economy. Nielson, 992 F.2d at 1120; Thompson v. Sullivan, 987 F.2d 1482, 1487 (10th Cir. 1993). The Commissioner meets this burden if the decision is supported by substantial evidence. Thompson, 987 F.2d at 1487.

Before going from step three to step four, the agency will assess the claimant's residual functional capacity (RFC). This RFC assessment is used to evaluate the claim at both step four and step five. 20 C.F.R. §§ 404.1520(a)(4), 404.1520(e,f,g); 416.920(a)(4), 416.920(e,f,g).

**II. History of case**

On October 28, 2010, administrative law judge (ALJ) James S. Stubbs issued his decision (R. at 11-20). Plaintiff alleges that he has been disabled since October 1, 2007 (R. at 11). Plaintiff is insured for disability insurance benefits through December 31, 2012 (R. at 13). At step one, the ALJ found that

plaintiff has not engaged in substantial gainful activity since plaintiff's alleged onset date (R. at 13). At step two, the ALJ found that plaintiff had the following severe impairments: degenerative joint disease of both the cervical and lumbar spines (R. at 13). At step three, the ALJ determined that plaintiff's impairments do not meet or equal a listed impairment (R. at 14). After determining plaintiff's RFC (R. at 15), the ALJ determined at step four that plaintiff is capable of performing past relevant work as a bank technical support/computer systems analyst (R. at 19). Therefore, the ALJ concluded that plaintiff was not disabled (R. at 20).

**III. Did the ALJ err by failing to consider the opinions of ARNP (advanced registered nurse practitioner) Traci Harsch?**

An ALJ must evaluate every medical opinion in the record. <u>Hamlin v. Barnhart</u>, 365 F.3d 1208, 1215 (10th Cir. 2004). This rule was recently described as a "well-known and overarching requirement." <u>Martinez v. Astrue</u>, 2011 WL 1549517 at *4 (10th Cir. Apr. 26, 2011). Even on issues reserved to the Commissioner, including plaintiff's RFC and the ultimate issue of disability, opinions from any medical source must be carefully considered and must never be ignored. Social Security Ruling (SSR) 96-5p, 1996 WL 374183 at *2-3. The ALJ "will" evaluate every medical opinion that they receive, and will consider a number of factors in deciding the weight to give to

any medical opinion.  20 C.F.R. §§ 404.1527(c), 416.927(c).  It is clear legal error to ignore a medical opinion.  <u>Victory v. Barnhart</u>, 121 Fed. Appx. 819, 825 (10th Cir. Feb. 4, 2005). Furthermore, according to SSR 96-8p:

> If the RFC assessment conflicts with an opinion from a medical source, the adjudicator must explain why the opinion was not adopted.

1996 WL 374184 at *7.

Although an ALJ is not required to discuss every piece of evidence, the ALJ must discuss significantly probative evidence that he rejects.  <u>Clifton v. Chater</u>, 79 F.3d 1007, 1009-1010 (10th Cir. 1996).  Furthermore, the general principle that the ALJ is not required to discuss every piece of evidence does not control when an ALJ has opinion evidence from a medical source. In such a situation, the ALJ must make clear what weight he gave to that medical source opinion.  <u>Knight v. Astrue</u>, 388 Fed. Appx. 768, 771 (10th Cir. July 21, 2010).

The record contains two physical RFC assessments by physicians who did not treat or examine the plaintiff, but reviewed the medical records, one by Dr. Parsons (R. at 442-449), and another one by Dr. Williamson (R. at 623-630).  Their limitations were identical, except that Dr. Parsons included one additional environmental limitation (avoid concentrated exposure to vibration) that was not included in Dr. Williamson's report.

6

The ALJ indicated that his RFC findings were similar to the findings of Dr. Williamson (R. at 19).

The record also includes an independent medical evaluation from Dr. Curtis, dated May 17, 2010 (R. at 647-659, 677-681, Exhibits 24F and 27F).  Dr. Curtis opined that plaintiff could not stand, walk and sit for a full 8-hour day (R. at 677).  He also indicated that plaintiff would need to shift at will from sitting to standing/walking, would need to lie down at unpredictable times during a work shift (R. at 678), and would miss work more than three times a month because of his impairments or treatment (R. at 680).  Dr. Curtis stated that plaintiff's impairments equal listed impairment 1.04A (R. at 680-681).  The ALJ noted that this opinion "was procured for purposes other than the instant matter herein" (R. at 18).[1]  The ALJ stated that the medical expert, Dr. Axline, testified that the opinions of Dr. Curtis, including the environmental limitations, were invalid.  The ALJ also stated that the opinions of Dr. Curtis were not consistent with other evidence of record (R. at 18).

At a hearing on July 1, 2010, the ALJ took testimony from Dr. Axline, who testified as a non-examining medical expert after reviewing plaintiff's medical records (R. at 22, 50-59). Dr. Axline testified that plaintiff's lumbar disorder did not

---

[1] However, the ALJ failed to explain the relevance or significance of the statement that the opinion was procured for purposes other than the instant matter herein.

meet or equal a listing (R. at 57).  Dr. Axline made RFC findings which were adopted by the ALJ (R. at 58-59, 15, 19).

However, not mentioned by the ALJ was the medical opinion regarding plaintiff's physical RFC prepared by ARNP (advanced registered nurse practitioner) Traci Harsch on July 7, 2009 (R. at 632-635).  ARNP Harsch agreed with Dr. Curtis that plaintiff could not stand, walk and/or sit for an 8-hour workday (R. at 632).  ARNP Harsch agreed with Dr. Curtis that plaintiff would need to shift at will from sitting to standing/walking, and would need to lie down at unpredictable times during a work shift (R. at 633).  ARNP Harsch also agreed with Dr. Curtis that plaintiff would miss work more than three times a month due to his impairments or treatment (R. at 635).  On September 9, 2009 ARNP Harsch indicated that plaintiff was disabled because of cervical and lumbar spinal stenosis.  The report also described the severity of the disabling medical condition, and plaintiff's physical limitations (R. at 419-420).

Treatment records from the Shawnee County Health Agency indicate that ARNP Harsch reviewed and signed a patient health history on the plaintiff on May 26, 2009 (R. at 433-436), and signed provider progress notes on the plaintiff on May 28, 2009 and July 8, 2009 (R. at 431-432, 425-426).  A provider order sheet also shows entries in plaintiff's medical records signed by ARNP Harsch on July 29, 2009, August 18, 2009, September 1,

2009, September 30, 2009 and October 29, 2009 (R. at 422). Thus, it appears from the medical records that ARNP Harsch was a medical treatment provider for the plaintiff, and thus was the only medical source providing opinions regarding plaintiff's RFC who treated the plaintiff.

The term "medical sources" refers to both "acceptable medical sources" and other health care providers who are not "acceptable medical sources." SSR 06-03p, 2006 WL 2329939 at *1. "Acceptable medical sources" include licensed physicians and licensed or certified psychologists. 20 C.F.R. § 404.1513(a)(1)-(2); 20 C.F.R. § 404.1502.

A nurse practitioner is not an "acceptable medical source" under the regulations. 20 C.F.R. § 404.1513(a). However, evidence from "other medical sources," including a nurse practitioner, may be based on special knowledge of the individual and may provide insight into the severity of an impairment and how it affects the claimant's ability to function. Opinions from other medical sources are important and should be evaluated on key issues such as impairment severity and functional effects, along with the other relevant evidence in the file. The fact that an opinion is from an "acceptable medical source" is a factor that may justify giving that opinion greater weight than an opinion from a medical source who is not an "acceptable medical source" because "acceptable medical

sources" are the most qualified health care professionals. However, depending on the particular facts in a case, and after applying the factors for weighing opinion evidence, an opinion from a medical source who is not an "acceptable medical source" may outweigh the opinion of an "acceptable medical source," including the medical opinion of a treating source. SSR 06-03p, 2006 WL 2329939 at **2,3,5.

ARNP Harsch was the only medical source providing opinions regarding plaintiff's RFC who treated the plaintiff. Her opinions, and those of Dr. Curtis, an independent medical examiner, both indicate that plaintiff cannot sit, stand and/or walk for an 8-hour workday. However, the ALJ never even mentioned the opinions of ARNP Harsch, and therefore failed to indicate what weight, if any, should be attached to her opinions. The regulations, rulings, and case law, as set forth above, clearly dictate that the ALJ must discuss all medical opinion evidence, particularly when the ALJ's RFC findings conflict with those medical opinions. The need to discuss the medical opinion evidence is even more apparent when that evidence is from a treating medical source, and when those opinions are similar to those of an independent medical examiner. Although the ALJ discounted the opinions of Dr. Curtis because they were allegedly inconsistent with the evidence of record, the record demonstrates that the opinions of

10

Dr. Curtis were in fact similar to those of a treating medical source. Therefore, this case shall be remanded in order for the ALJ to determine what weight should be accorded to the opinions of ARNP Harsch.

When this case is remanded, the ALJ must not consider the opinions of ARNP Harsch in isolation, but her opinions must be considered in light of the entire evidentiary record, including the opinions and assessments of other medical sources. The court is concerned with the necessarily incremental effect of each individual report or opinion by a source on the aggregate assessment of the evidentiary record, and, in particular, on the evaluation of reports and opinions of other medical treating or examining sources, and the need for the ALJ to take this into consideration. See Lackey v. Barnhart, 127 Fed. Appx. 455, 458-459 (10th Cir. April 5, 2005). In general, more weight is given to the opinions of a treating medical source than to the opinions of other medical sources, and the opinions of an examining medical source are entitled to more weight than the opinions of a non-examining medical source. 20 C.F.R. § 404.1527(c)(1,2); 416.927(c)(1,2). Furthermore, the ALJ must provide a legally sufficient explanation for rejecting the opinions of treating and examining medical sources in favor of a non-examining medical source. Robinson v. Barnhart, 366 F.3d 1078, 1084 (10th Cir. 2004).

**IV.   Other issues raised by the plaintiff**

Plaintiff also asserts error by the ALJ as to whether plaintiff's impairments meet or equal listed impairment 1.04A, and the weight to be accorded to plaintiff's testimony.  The court will not discuss these issues in detail because they may be affected by the ALJ's resolution of the case on remand after considering the medical source opinions of ARNP Harsch.  See Robinson v. Barnhart, 366 F.3d 1078, 1085 (10th Cir. 2004).

IT IS THEREFORE ORDERED that the judgment of the Commissioner is reversed and remanded pursuant to sentence four of 42 U.S.C. § 405(g) for further proceedings consistent with this memorandum and order.

Dated this 13th day of November 2012, Topeka, Kansas.

s/ Sam A. Crow_____
Sam A. Crow, U.S. District Senior Judge